UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DUANE MCMULLAN,                                                      Plaintiff,

v.                                               Civil Action No. 3:16-cv-473-DJH

UNITED STATES OF AMERICA,                         Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Duane McMullan sustained heat-related injuries while working as a mail carrier for the United States Postal Service (USPS). (Docket No. 1-1, PageID # 7; D.N. 7-1, PageID # 32) McMullan alleges that his supervisor, Kevin Scott, failed to follow USPS policies and procedures for treating heat-related injuries when he did not call 911 or take McMullan to the hospital immediately. (D.N. 1-1, PageID # 7–10) The United States was substituted for Scott under the Federal Employees Liability Reform and Tort Compensation Act. (D.N. 4, PageID # 21 (citing 28 U.S.C. § 2679)) The United States then filed a motion to dismiss, asserting that the Court lacks subject matter jurisdiction because the Federal Employees Compensation Act (FECA) provides the exclusive remedy for McMullan's claims. (D.N. 7-1, PageID # 35–37 (citing 5 U.S.C. § 8102(a))) After the parties briefed the issue, the United States filed a motion to strike McMullan's sur-reply. (D.N. 11) Because the Court finds that McMullan's claims fall under FECA and thus the Court lacks subject matter jurisdiction, the motion to dismiss will be granted. The motion to strike will be denied as moot.

**I.      BACKGROUND**

On July 29, 2015, Plaintiff Duane McMullan was delivering mail on foot for USPS in Louisville, Kentucky. (D.N. 1-1, PageID # 7; D.N. 7-1, PageID # 32) A resident noticed that

1

McMullan appeared to be suffering from heat-related symptoms and invited him inside her home to cool off. (D.N. 1-1, PageID # 7) McMullan called his USPS supervisor, Kevin Scott, who allegedly told the resident not to take McMullan to the hospital or call 911. (*Id.*, PageID # 8) McMullan claims that Scott told the resident that he would send someone to pick up McMullan and take him to the hospital. (*Id.*) Approximately fifteen minutes later, Scott arrived to pick up McMullan. (*Id.*) McMullan claims that rather than immediately taking him to the hospital, Scott stopped at the office to pick up some paperwork. (*Id.*, PageID # 9) When they arrived at the office, Scott allegedly left McMullan in the van, rolled the windows down, and turned off the air conditioning. (*Id.*, PageID # 10) According to McMullan, a co-worker saw him in the van and, seeing that he was disoriented and shaking, attended to McMullan while another employee called 911. (*Id.*) Paramedics arrived and took McMullan to the hospital. (*Id.*, PageID # 11)

McMullan filed suit against Scott in Jefferson County, Kentucky Circuit Court, alleging that Scott was negligent in his treatment of McMullan's injury. (*Id.*, PageID # 13) Scott removed the case to this Court. (D.N. 1) Following removal, Scott filed a notice seeking substitution of the United States as defendant pursuant to the Federal Employees Liability Reform and Tort Compensation Act. (D.N. 4, PageID # 21 (citing 28 U.S.C. § 2679))

Once substituted, the United States filed a motion to dismiss. (D.N. 7) The government argues that the Federal Employees Compensation Act (FECA) bars McMullan's claims because it provides "the exclusive remedy for job-related injuries sustained by federal workers" and thus the Court lacks subject matter jurisdiction over such claims. (D.N. 7-1, PageID # 35–37 (citing 5 U.S.C. § 8102(a))) Additionally, the United States asserts that McMullan failed to exhaust his administrative remedies under the Federal Tort Claims Act (FTCA). (*Id.*, PageID # 37–39)

In response, McMullan claims that "FECA does not bar tort lawsuits against co-employees when those employees are acting outside the scope of their employment." (D.N. 8, PageID # 48 (citing *Bates v. Harp*, 573 F.2d 930 (6th Cir. 1978))) McMullan alleges that Scott was acting outside the scope of his employment because he violated USPS policies and procedures for addressing heat-related injuries. (*Id.*, PageID # 48–50)

The United States asserts that the Attorney General's scope-of-employment certification filed in support of the Notice of Substitution (D.N. 4) is prima facie evidence that Scott was acting within the scope of his employment and McMullan has not produced sufficient evidence to prove otherwise. (D.N. 9, PageID # 54)

McMullan filed a sur-reply, again arguing that Scott acted outside the scope of his employment. (D.N. 10) The United States moved to strike the sur-reply on the grounds that McMullan did not seek leave of the Court before filing it. (D.N. 11) McMullan did not respond to the motion to strike.

## II. DISCUSSION

### A. Motion to Dismiss

"Generally, if a federal employee sustains an injury 'while in performance of his duty,' compensation provided through FECA is his exclusive remedy against the United States." *Williamson v. United States*, No. 5:12-CV-334-JMH, 2013 WL 4785689, at *2 (E.D. Ky. Sept. 5, 2013) (citing 5 U.S.C. § 8102(a); *Wright v. United States*, 717 F.2d 254, 256–57 (6th Cir. 1983)). If a claim falls under FECA or if "there is a substantial question of FECA coverage," the Court lacks subject matter jurisdiction to consider the complaint. *Wright*, 717 F.2d at 257. The Supreme Court has explained that

> FECA's exclusive-liability provision . . . was designed to protect the Government
> from suits under statutes, such as the Federal Tort Claims Act, that had been

3

enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise – the "*quid pro quo*" – commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

*Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94 (1983).

The parties do not dispute that McMullan sustained his injuries "while in performance of his duty" as a mail carrier, making his claims subject to FECA's limits. (D.N. 1-1, PageID #7; D.N. 7-1, PageID # 32–33) Nevertheless, McMullan argues that FECA does not bar his suit because Scott was acting outside the scope of his employment. (D.N. 8, PageID # 48 (citing *Bates*, 573 F.2d 930))

In *Bates*, the Sixth Circuit found that FECA did "not abrogate the common law right of an employee to sue a negligent fellow employee." 573 F.2d at 935. However, if the fellow employee was acting within the scope of his employment, "the United States may be substituted as the defendant" under the Westfall Act, 28 U.S.C. § 2679. Howard L. Graham, Fed. Emps. Comp. Act Prac. Guide § 23:5 (2d ed. 2016). "If such a substitution takes place, then FECA may bar the plaintiff's claim as the suit no longer would be against the co-employee but rather against the United States." *Id*.; *see also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1142–43 (6th Cir. 1996).

The Westfall Act provides:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

4

28 U.S.C. § 2679(d)(1). The Sixth Circuit has held that the Attorney General's certification under the Westfall Act is "prima facie evidence that the employee was acting within the scope of employment." *RMI Titanium*, 78 F.3d at 1143.

The Attorney General's certification "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee," however. *Coleman v. United States*, 91 F.3d 820, 823–24 (6th Cir. 1996) (internal quotation marks omitted) (citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995); *RMI Titanium*, 78 F.3d at 1143). The Court must also look to state law to determine whether the employee was acting within the scope of his employment. *See id.*; *see also Gilbar v. United States*, 229 F.3d 1151 (6th Cir. 2000). "Under Kentucky law, for alleged conduct to be considered within the scope of employment 'the conduct must be of the same general nature as that authorized or incidental to the conduct authorized.'" *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000)). Kentucky courts look to the following four factors in determining whether an employee's action is within the scope of employment:

> (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties.

*Coleman*, 91 F.3d at 824 (citing *Flechsig v. United States*, 991 F.2d 300, 303 (6th Cir. 1993); *Frederick v. Collins*, 378 S.W.2d 617, 619 (Ky. Ct. App. 1964); *Wood v. Se. Greyhound Lines*, 194 S.W.2d 81, 83 (Ky. 1946)).

### 1. Similar Conduct

The Sixth Circuit has explained that "the duties of an employee include those that he or she is 'expressly or impliedly' hired to perform." *Coleman*, 91 F.3d at 824 (citing *Marcum v.*

*United States,* 324 F.2d 787, 790 (6th Cir. 1963)). In *Coleman*, the Sixth Circuit "examine[d] [the defendant's] responsibilities as a postal worker holistically to determine whether they would reasonably include the type of activity at issue." *Id*.

Kevin Scott was McMullan's supervisor when the incident occurred. (D.N. 1-1, PageID # 8) McMullan states that Scott received training on the USPS's policies and procedures regarding heat-related injury and "was given clear instructions on numerous occasions for the post office on what to do in case of an emergency." (D.N. 8, PageID # 48–49) Therefore, Scott was both expressly and impliedly authorized to handle heat-related injuries and other employee emergencies as part of his duties. During the incident, Scott acted to address an employee's heat-related injury. The Court thus finds that Scott's conduct was similar to that which he was hired to perform. *See Coleman*, 91 F.3d at 824.

### 2. Spacial and Temporal Limits

The incident occurred during business hours and at locations that were within the authorized spacial limits of Scott's employment. Scott picked up McMullan at a location that was on McMullan's mail route and took him to the local USPS office. Therefore, the Court finds that Scott's actions were within the spacial and temporal limits of his employment. *See id*.

### 3. In Furtherance of USPS Business

"The Sixth Circuit Court of Appeals, in applying Kentucky law . . . [has] held that when determining whether the employee's conduct furthers the business of the employer, the 'conduct in question need only be done in part to benefit the employer.'" *McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 840 (W.D. Ky. 2007) (quoting *Coleman*, 91 F.3d at 825–26). The employee acts outside the scope of his employment if he "acts from purely personal motive which [is] in no

6

way connected with the employer's interests." *Id*. (alterations omitted) (citing *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005)).

McMullan asserts that Scott was not acting in furtherance of USPS business because he did not follow USPS policies and procedures for handling heat-related injuries. For support, McMullan analogizes to the case of a pilot who flew during unsafe weather conditions despite being told by his employer not to do so; the pilot was found to have acted outside the scope of his employment. (D.N. 8, PageID # 49 (citing *Fowler v. Baalmann, Inc.*, 361 Mo. 204, 234 S.W.2d 11 (1950))) McMullan argues that because Scott was instructed on how to handle heat-related injuries and did not follow those instructions, he was acting outside the scope of his employment.

However, in *Fowler*, the court distinguished between the pilot's "purely voluntary act" that was "unknown and unaccepted" by the employer, and cases "where an employee was doing a thing he was employed to do, but was doing it in a manner prohibited by his employer." *Id*. at 212–13. The court explained that "[m]ere disobedience of an order as to the detail of the work in hand or the mere breach of a rule as to the manner of performing the work [is] not generally sufficient to deprive an employee of his right to compensation so long as he does not go out of the sphere of his employment." *Id*. at 212 (emphasis omitted). An employee acts outside the scope of his employment when his conduct "has been expressly forbidden." *Id*.

While Scott may not have complied with the instructions he was given for handling heat-related injuries, his actions were consistent with his job duties. *See id*. As discussed earlier, Scott's job duties included addressing employee injuries and emergencies. (D.N. 8, PageID # 48–49) Scott's actions were consistent with these duties when he picked up McMullan and took him back to the office. Even if it could be determined that Scott failed to follow USPS policy in

7

handling McMullan's illness, the noncompliance would be disobedience as to the details of the work, not a "purely voluntary act" that was forbidden by USPS. *Fowler*, 361 Mo. at 212–13. There is also no suggestion that Scott was acting from "purely personal motive." *McGonigle*, 481 F. Supp. 2d at 840 (citing *Patterson*, 172 S.W.3d at 369). Therefore, Court finds that Scott was acting in furtherance of USPS business.

### 4. Expected Conduct

"In looking at this factor, courts should refer back to their analysis used in the first factor to help determine whether the conduct was expected in light of the employee's duties." *Id*. (citing *Coleman,* 91 F.3d at 826). As addressed earlier, Scott was expected to assist with employee injuries. Therefore, even if Scott failed to comply with USPS instructions, the fact that he acted in response to McMullan's illness "was expectable in view of [his] duties." *Coleman*, 91 F.3d at 824.

In reviewing the four factors, the Court finds that all four indicate that Scott was acting within the scope of his employment during the incident at issue and thus the substitution of the United States was correct. *See Coleman*, 91 F.3d at 823–24. As a result, McMullan's claims fall under FECA, and the Court lacks subject matter jurisdiction. Therefore, the Court will grant the motion to dismiss. (D.N. 7)

### B. Motion to Strike

Because the Court lacks subject matter jurisdiction and will dismiss the case, it need not address the government's motion to strike. The motion will be denied as moot. *See Spradlin v. Richard*, 572 F. App'x 420, 425 (6th Cir. 2014).

### III. CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The United States' motion to dismiss (D.N. 7) is **GRANTED**.

(2) The United States' motion to strike (D.N. 11) is **DENIED as moot**.

(3) This action stands **DISMISSED** with prejudice and is **STRICKEN** from the Court's docket.

March 6, 2017

**David J. Hale, Judge**
**United States District Court**